1
2
3
4
5
6
7

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

8
9

10 | LISA RASUMUSSEN, individually and on
behalf of all other similarly situated,

| ) |
| ) | No.

11 | Plaintiff, | ) | NOTICE OF REMOVAL

12 | v.

13 | PACIFIC WEBWORKS, INC., a Nevada
Corporation and JOHN DOE DEFENDANT,

14

Defendants.

15

16     Defendant Pacific Webworks, Inc. ("Webworks") hereby removes the above-

17 captioned action from the Superior Court of Washington, Snohomish County, pursuant to 28

18 U.S.C. § 1453(b) and 28 U.S.C. § 1446(a), to the United States District Court for the Western

19 District of Washington.  In support of its removal, Webworks states as follows:

20     1.     Plaintiff Lisa Rasmussen filed her Class Action Complaint ("Complaint") in

21 the Superior Court of Washington, Snohomish County, on or about November 20, 2009 (a

22 copy of the Complaint is appended hereto as Exhibit A).  The Complaint was served on a

23 registered agent of Webworks on December 2, 2009 (a copy of the summons is appended

24 hereto as Exhibit B).  No other pleadings have been filed or otherwise received by Webworks.

25     2.     As required by 28 U.S.C. § 1446(b), this Notice of Removal is filed with this

26 Court within thirty days of Webworks' receipt of the Complaint.

27

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700

1

DIVERSITY OF CITIZENSHIP AND PUTATIVE CLASS MEMBERSHIP

2      3.      Plaintiff Lisa Rasmussen is a Washington resident. (Compl. ¶ 29.) Webworks

3  is a corporation organized under the laws of the State of Nevada.  (Id., ¶ 30.)  Webworks does

4  business in a number of states.  Webworks is headquartered in Salt Lake City, Utah.  (Id.)

5  Therefore, there is diversity of citizenship between Ms. Rasmussen and Webworks so the

6  diversity requirement is met under the Class Action Fairness Act, as defined under 28 U.S.C.

7  § 1332(d)(2)(A), (4)(A).

8      4.      As explained below, the number of members of all proposed plaintiff classes in

9  the aggregate is greater than 100, and no defendant is a state, state official, or governmental

10  entity.  42 U.S.C. § 1332(d)(5)(B).

11                          AMOUNT IN CONTROVERSY

12      5.      Plaintiff brings this action on behalf of herself and a "Pacific Webworks Class"

13  defined as "[a]ll Washington residents who submitted payment information to Pacific

14  Webworks for the purpose of obtaining Pacific Webworks's products or services, and who

15  were charged any amount other than the stated shipping and handling or discounted fee (the

16  'Class')."  (Compl. ¶ 41.)

17      6.      Plaintiff does not specify the amount of damages she seeks on behalf of herself

18  and the Class.  When the complaint does not specify an amount in controversy, as is the case

19  here, the defendant can remove to federal court by showing that the amount in controversy

20  exceeds the jurisdictional threshold by a preponderance of the evidence.  Abrego Abrego v.

21  Dow Chem. Co., 443 F.3d 676, 685 (9th Cir. 2006) ("We therefore hold that under CAFA the

22  burden of establishing removal jurisdiction remains, as before, on the proponent of federal

23  jurisdiction."); id. at 683 ("Where the complaint does not specify the amount of damages

24  sought, the removing defendant must prove by a preponderance of the evidence that the

25  amount in controversy requirement has been met.").  Under the preponderance of evidence

26  standard, "the defendant must provide evidence establishing that it is more likely than not that

27  the amount in controversy exceeds [the threshold] amount."  Sanchez v. Monumental Life Ins.

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700

1    Co., 102 F.3d 398, (9th Cir. 1996) (internal citations and quotation marks omitted). Where a

2    plaintiff fails to plead a specific amount of damages and the amount in controversy is not

3    "facially apparent" from the complaint, "the court may consider facts in the removal" notice

4    to determine the amount at issue. *Kroske v. U.S. Bank Corp.*, 432 F.3d 976, 980 (9th Cir.

5    2005) (quoting *Singer v. State Farm Mut. Auto. Ins. Co.*, 113 F.3d 373, 377 (9th Cir. 1997)).

6          7.    The Class Action Fairness Act ("CAFA") provides for federal court

7    jurisdiction over class action suits when the "amount in controversy" exceeds $5 million. See

8    28 U.S.C. § 1332(d)(2). "[U]nder § 1332(d)(6), the claims of class members are aggregated

9    to determine whether the amount in controversy exceeds $5,000,000." Abrego, 445 F.3d at

10   684. In petitioning this Court for removal, Webworks in no way concedes the truth of the

11   allegations in the Complaint, admits liability, or concedes that Plaintiff or members of the

12   class would be entitled to recover any or all of the amounts claimed. (Bell Decl. ¶ 3 (a copy

13   of the Declaration of Ken Bell, dated December 17, 2009, is being filed simultaneously with

14   this Notice of Removal.)) Such an admission is not required. "[T]he statute does not make

15   federal jurisdiction depend on how much the plaintiff is due to recover. The question is what

16   amount is in controversy." Spivey v. Vertrue, Inc., 528 F.3d 982, 985-86 (7th Cir. 2008)

17   (internal citations omitted). In calculating the amount in controversy, Webworks relies on the

18   allegations in the Complaint and assumes their truth for the purposes of this Notice of

19   Removal only. Id.; see also Brill v. Countrywide Home Loans, Inc., 427 F.3d 446, 449 (7th

20   Cir. 2005) (holding that the defendant "did not have to confess liability in order to show that

21   the controversy exceeds the threshold"); id. ("[P]art of the removing party's burden is to show

22   not only what the stakes of the litigation could be, but also what they are given the plaintiff's

23   actual demands. . . . The demonstration concerns what the plaintiff is claiming (and thus the

24   amount in controversy between the parties), not whether plaintiff is likely to win or be

25   awarded everything he seeks.") Thus, without admitting liability or damages, Webworks

26   respectfully contends that the amount in controversy exceeds the $5 million threshold for

27   federal jurisdiction.

NOTICE OF REMOVAL — 3
DWT 13726250v2 0091129-000001

8.      Plaintiff seeks each of the following four categories of damages, which should be considered for the purposes of determining the amount in controversy: (1) general damages, which requires an examination of purportedly unauthorized charges to the credit or debit cards of the prospective class; (2) increased or treble damages; (3) attorneys' fees; and (4) injunctive relief.  (Compl. ¶ 57.)

General Damages:

9.      Plaintiff seeks compensation for potential class members, who would potentially include all Webworks' customers residing in Washington. (Compl. ¶ 41.)  Under the first cause of action, the Plaintiff seeks actual damages under Washington's Consumer Protection Act. (Compl. ¶ 57.)  Plaintiff's second cause of action seeks damages "caused by Defendant's fraud and/or fraud in the inducement." (Compl. ¶ 71.)  Likewise, Plaintiff's third cause of action seeks damages for conspiracy to commit fraud. (Compl. ¶ 72-78.)  Because the Plaintiff's fraud claims are based on purported misrepresentations about the "efficacy, association, and price of work-at-home products," damages for fraud may amount to restitution of any fraudulently induced credit card charges.  (Compl. ¶ 60.)

10.     To determine the amount in controversy for these claims, the Court should consider charges on accounts of Washington customers from April 2007 to the present. According to the allegations of the Complaint, Ms. Lisa Rasmussen was charged $79.90 and an additional $24.90 per month without authorization.  (Compl. ¶¶ 35-40.)  According to the Complaint, unauthorized charges of $104.80 are typical. (Compl. ¶¶ 25, 45.)

11.     For the period from April 2007 to the present, Webworks had 15,731 customers who reside in Washington. (Bell Decl. ¶ 6.)  All of these customers pay Webworks by credit or debit card. (Id. ¶ 7.)  Assuming, arguendo, the accuracy of the allegations in the Complaint, and that each customer was only charged a single charge of $104.80, the restitution claim alone would place in controversy the amount of $1,648,608.80.  Plaintiff also alleges that customers were charged an additional monthly charge of $24.90 "for so long as the consumer fails to notice this charge and object to it." (Compl. ¶ 25.)  This allegation

NOTICE OF REMOVAL — 4
DWT 13726250v2 0091129-000001

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700

1  places in controversy an additional amount of up to $390,000 per month for the 32-month

2  period from April 2007 to the present.  The claim for restitution of initial charges, combined

3  with just nine months of recurring changes would place the amount in controversy in excess

4  of $5 million.

5         Increased and/or Treble Damages:

6         12.    Plaintiff also seeks increased and/or treble damages under the Washington

7  Consumer Protection Act, RCW 19.86.0180.  (Compl. ¶ 57, Prayer for Relief d.)

8  RCW 19.86.090 allows the court, in its discretion, to "increase the award of damages up to

9  any amount not to exceed three times the actual damages sustained" for violations of

10  RCW 19.86.020, which makes "unfair or deceptive acts or practices in the conduct of any

11  trade or commerce" unlawful.  Id.  Punitive damage awards must be considered in calculating

12  the amount in controversy for jurisdictional purposes.  Yates v. Nimeh, 486 F.Supp.2d 1084,

13  1089 (N.D. Cal. 2007) ("In calculating the amount in controversy, the Court must also

14  consider punitive damages that plaintiff can recover as a matter of law.");  Gibson v. Chrysler

15  Corp., 261 F.3d 927, 945 (9th Cir. 2001) ("It is well established that punitive damages are part

16  of the amount in controversy in a civil action.").  Assuming, arguendo, that increased and/or

17  treble damages are appropriate here as alleged by Plaintiff, the amount in controversy, not

18  including attorneys' fees, would be at least $4.8 million ($1.6 million x 3) if you consider

19  only the initial charges alleged by Plaintiff and do not consider Plaintiff's claims concerning

20  recurring monthly charges.  If Plaintiff's claim for recurring monthly charges is taken into

21  account, the amount in controversy would be significantly in excess of $5 million.

22         Attorneys' Fees:

23         13.    Plaintiff also seeks recovery of attorneys' fees. (Compl., ¶ 57, Prayer for Relief

24  (e).)  The Washington Consumer Protection Act, RCW ch. 19.86, under which the Plaintiff

25  brings her first cause of action, provides that a successful plaintiff can "recover the actual

26  damages sustained by him or her, or both, together with the costs of the suit, including a

27  reasonable attorney's fee." RCW 19.86.090.  Both mandatory and discretionary attorneys' fee

NOTICE OF REMOVAL — 5
DWT 13726250v2 0091129-000001

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington  98101-3045
(206) 622-3150 · Fax: (206) 757-7700

1   awards can be considered by the Court in determining the jurisdictional amount. <u>Galt G/S v.</u>

2   <u>JSS Scandinavia</u>, 142 F.3d 1150, 1156 (9th Cir. 1998) ("[W]here an underlying statute

3   authorizes an award of attorneys' fees, either with mandatory or discretionary language, such

4   fees may be included in the amount in controversy.").

5       14.    The Plaintiff has retained a purportedly experienced class action firm,

6   KamberEdelson, LLC, to bring suit on behalf of the putative class. (Compl. ¶ 20.) The

7   average attorney fee award in class action cases in the federal courts, as determined by a

8   Federal Judicial Center survey, is 29 percent of the total recovery. <u>See</u> Gregory G. Wrobel &

9   Michael J. Waters, "Early Returns: Impact of the Class Action Fairness Act on Federal

10  Jurisdiction Over State Law Class Actions," 21-FALL Antitrust 45, 50 (Fall 2006).

11      15.    An award of 29% of a total recovery that <u>excludes</u> Plaintiff's claims for

12  recurring monthly charges places in controversy an additional sum of $1.4 million. An

13  attorney fee award of even a mere 5% of a total recovery (excluding recurring monthly

14  charges) places the amount in controversy in excess of $5 million. Again, if Plaintiff's claims

15  for recurring monthly charges are considered, as they should be, the amount in controversy is

16  increased substantially.

17      16.    As shown above, Plaintiffs' claims for general damages, increased and/or

18  treble damages, and attorneys' fees, by themselves, place the amount in controversy well in

19  excess of $5 million.

20      <u>Injunctive Relief:</u>

21      17.    Finally, Plaintiff seeks injunctive relief. (Compl. ¶ 57, Prayer for Relief (c).)

22  "[T]he requirement of the statutory minimum amount in controversy can be satisfied in an

23  injunctive case . . . by showing that the injunction would force the defendant to forgo a benefit

24  to him that is worth more than the threshold amount specified in the diversity statute . . . ." *In*

25  *re Brand Name Prescription Drugs Antitrust Litig.*, 123 F.3d 599, 610 (7th Cir. 1997). Under

26  Count 1, the Plaintiff "seeks an order requiring Defendant to . . . immediately stop its

27  violations" of the Consumer Protection Act. (Compl. ¶ 57.) According to the Complaint,

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington  98101-3045
(206) 622-3150 · Fax: (206) 757-7700

1   these illegal acts include "(i) creating and supporting advertising that fails to . . . disclose the

2   actual price of its products; (ii) deceptively inducing Plaintiff and the Classes to proffer

3   payment information based on misrepresentations; and/or (iii) charging credit cards without

4   authorization." (Compl. ¶ 51.)

5       18.     Although Webworks disputes any implication that its conduct is illegal, the

6   injunctive relief sought apparently seeks to close down Webworks' entire business operation.

7   (Id. ¶ 51.)  By requesting this injunctive relief, the Plaintiff is essentially asking the Court to

8   order the Defendant to stop all business operations in the State of Washington.  Because its

9   business operations are web-based, it would be difficult if not impossible to limit its business,

10  particularly its advertising, to non-Washington residents.  If the Defendant was obligated to

11  stop its business operations for even a month, they could stand to lose $1.4 million in monthly

12  revenue. (Bell Decl. ¶ 8.)  For that reason, a successful injunction would potentially result in

13  the close of Webworks' national and international operations, thereby placing the amount in

14  controversy well in excess of $5 million.  (Id. ¶ 8.)

15      19.     A preponderance of the evidence shows that this class action is one over which

16  this Court has original jurisdiction pursuant to 28 U.S.C. § 1332(d)(2).  See Sanchez v.

17  Monumental Life Ins. Co., 102 F.3d 398, (9th Cir. 1996) (holding that under the

18  preponderance of the evidence standard, "the defendant must provide evidence establishing

19  that it is more likely than not that the amount in controversy exceeds [the threshold]

20  amount"); Abrego Abrego v. Dow Chem. Co., 443 F.3d 676, 683 (9th Cir. 2006) ("Where the

21  complaint does not specify the amount of damages sought, the removing defendant must

22  prove by a preponderance of the evidence that the amount in controversy requirement has

23  been met.").

24      20.     Consequently, the case may be removed to this Court by Webworks pursuant

25  to the provisions of 28 U.S.C. § 1446 because it is a class action in which the named plaintiff

26  "is a citizen of a State different from any defendant" and because the "matter in controversy

27

NOTICE OF REMOVAL — 7
DWT 13726250v2 0091129-000001

1  exceeds the sum or value of $5,000,000, exclusive of interest and costs." 28 U.S.C. §

2  1332(d)(2).

3      21.    A copy of this Notice of Removal is being served upon Plaintiff through her

4  attorneys of record, and filed with the Clerk of the Superior Court of Washington, Snohomish

5  County, as provided by 28 U.S.C. § 1446(d).

6      22.    Copies of all pleadings and orders served upon the removing Defendant in

7  state court are attached as exhibits hereto, pursuant to 28 U.S.C. § 1446(a).

8      23.    The United States District Court for the Western District of Washington is the

9  federal judicial district embracing Snohomish County Superior Court, where the suit was

10  originally filed.  28 U.S.C. § 128(b).  Seattle is the proper division or location for the matter.

11  CR 5(e)(1).

12      WHEREFORE, Pacific Webworks prays that the above-entitled action be removed to

13  the United States District Court for the Western District of Washington.

14      DATED this 23rd day of December, 2009.

15
16      Davis Wright Tremaine LLP
    Attorneys for Defendant Pacific Webworks, Inc.

17      By s/Kenneth E. Payson
18      Kenneth E. Payson, WSBA #26369
    1201 Third Avenue, Suite 2200
19      Seattle, Washington  98101-3045
    Telephone: (206) 622-3150
20      Fax: (206) 757-7700
    E-mail: kenpayson@dwt.com

21      Of Counsel:

22      Robert E. Mansfield
    Todd M. Shaughnessy
23      J. Elizabeth Haws
    Snell & Wilmer L.L.P.
24      15 West South Temple, Suite 1200
    Salt Lake City, Utah  84101-1004
25      Telephone:  (801) 257-1900
    Fax:  (801) 257-1800

26
27      Attorneys for Defendant Pacific Webworks, Inc.

### CERTIFICATE OF SERVICE

I hereby certify that on this day, I caused the foregoing **NOTICE OF REMOVAL** to

be electronically filed through the CM/ECF system, and served counsel of record, via U.S.

First-Class Mail, addressed as follows:

Clifford A. Cantor
Law Offices of Clifford A. Cantor, P.C.
627 208th Ave. SE
Sammamish, WA 98074
cacantor@comcast.net

Will Haselden
Christopher Dore
KamberEdelson, LLC
350 North LaSalle, Suite 1300
Chicago, Illinois 60654
whaselden@kamberedelson.com
cdore@kamberedelson.com

DATED this 23rd day of December, 2009.

           *s/ Kenneth E. Payson*
           Kenneth E. Payson, WSBA #26369
           Davis Wright Tremaine LLP
           1201 Third Avenue, Suite 2200
           Seattle, Washington 98101-3045
           Telephone: (206) 622-3150
           Fax: (206) 757-7700
           E-mail: kenpayson@dwt.com

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700

Exhibit A

FILED

MAR 20 2010

SONYA KRASKI
SNOHOMISH COUNTY CLERK
EX-OFFICIO CLERK OF COURT

SUPERIOR COURT OF WASHINGTON

SNOHOMISH COUNTY

| | |
|---|---|
| LISA RASMUSSEN, individually and on behalf of all others similarly situated, | Case No. |
| Plaintiff, | CLASS ACTION |
| vs. | COMPLAINT |
| PACIFIC WEBWORKS, INC., a Nevada Corporation, and JOHN DOE DEFENDANT, | |
| Defendants. | JURY TRIAL DEMANDED |

Plaintiff Lisa Rasmussen brings this action against Defendant Pacific WebWorks, Inc. and John Doe Defendant (hereinafter collectively referred to in the singular as "Defendant") based upon Defendant's practice of deceptively billing Plaintiff and others similarly situated others for unauthorized charges. Plaintiff alleges as follows upon personal knowledge as to herself and her own acts and experiences and, as to all other matters, upon information and belief, including investigation conducted by her own attorneys.

**NATURE OF THE ACTION**

1.     With unemployment rising and wages stagnant, Americans are suffering through the worst economy in decades.  In these trying times, ordinary consumers are more vulnerable than ever to a proliferation of work-at-home offers that promise the ability to easily make

COMPLAINT                                    - 1 -

LAW OFFICES OF
CLIFFORD A. CANTOR, P.C.
627 208th Ave. SE
Sammam sh, WA 98074-7033
Tel  (425) 868-7912 • Fax  (425) 868-7870

1   thousands of dollars from at-home businesses.

2       2.      The offers hosted by Defendant Pacific WebWorks state that consumers will work

3   directly with, and be well-paid by, the giant web search engine Google.  The potential to work for

4   this enormously successful company makes the promise of a good income described in the offers

5   from Defendant seem reasonable.

6       3.      Defendant's offers begin as initial representations made through spam email

7   offers, sponsored links, banner ads on internet search pages, and most deceptively, as links in

8   fake news articles and fake blogs.  The purpose of each of these initial representations is to drive

9   consumer traffic to landing pages on which they can submit a credit card to make a purchase.

10      4.      These sponsored links, banner ads, fake news articles, and similar methods of

11  gaining a consumer's attention are created and operated by a group of affiliate marketers and ad

12  networks whose sole objective is to drive traffic to merchant landing pages such as those

13  featuring the products of Defendant Pacific WebWorks.  John Doe Defendant acts in this space

14  as an ad network and/or affiliate marketer, and in that capacity, actively drives traffic to Pacific

15  WebWorks's websites for its own monetary gain.

16      5.      Defendant Pacific WebWorks and the John Doe Defendant work together to

17  "optimize" transaction pages so as to drive ever-higher rates of purchase.  Both are motivated to

18  take this active role because the sales revenue generated on a Pacific WebWorks site is the only

19  way that both Pacific WebWorks and the upstream John Doe Defendant ad network are

20  compensated.  Therefore, the John Doe Defendant has a vested interest in not only directing

21  consumers to the product page, but also ensuring and actively inducing the consumer to purchase

22  the product.  This optimization can include changing the design of ad pages in the order path

23  including the color, words used, placement of words, font size, placement of the Terms of

24  Service, and the use of such "pressures" as phrases like "You Qualify for Instant Access!" and

25  "...these kits are going FAST!" or the use of running timers counting down the minutes left

26  before an offer "expires."  Such pressures are simply fabrications by Defendant that are

27  dynamically inserted into the website at specified screen locations to further drive sales.

COMPLAINT                                    - 2 -

LAW OFFICES OF
CLIFFORD A. CANTOR, P.C.
627 208th Ave. SE
Sammamish, WA 98074-7033
Tel: (425) 868-7813 • Fax: (425) 868-7870

6.    As a primary inducement, consumers respond to initial representations and screenshots that appear to state a relationship with Google itself. The use of Google in this manner, and specifically the prospect of working for one of the world's most successful companies, is a primary non-price inducement to deceptively entice consumers to purchase the Pacific WebWorks product.

7.    After a consumer is directed by John Doe Defendant to a Pacific WebWorks landing page displaying a work-at-home offer, Defendant pushes a product, often a CD or software kit, purportedly designed to enable consumers to "Earn up to $978 or more a day using GOOGLE," "Work from Home & learn to make $1000s a day using GOOGLE!," and informs them "Anyone with a computer and basic typing skills can make money using Google!".

8.    These landing pages typically contain language describing their offering "[a]s seen on: Fox News, CNN, and USA Today." The website prominently features network logos without license from these media entities and are plainly designed to suggest to a consumer that the offering is supported by a reputable entity. Pacific WebWorks products have never been "seen on" or endorsed by any of the networks claimed on the websites.

9.    The initial landing page seen by a consumer is bright and welcoming, and promises "FAST CASH USING GOOGLE" and "HOME INCOME USING GOOGLE," among other pleasing inducements. Representations that drive consumers to these landing pages promise "$7500 a month job Working from Home Job; requires basic computer skills." The domain name of this link to one of Defendant's landing pages is "Google.world-Jobs-herald.com/jobs." Banner ads even promise "scam free" offers that link to landing pages used by Defendant on which consumers are promised Pacific WebWorks products at prices that are not, in fact, remotely close to the actual price charged by Pacific WebWorks.

10.    Defendant's landing pages often contain a testimonial photo of a consumer that benefited from Defendant's product. In fact, this photo and testimonial are fake, inasmuch as Defendant simply uses a stock photo (commonly available at websites like iStockPhoto.com) and fabricates the testimonial.

COMPLAINT                                    - 3 -

LAW OFFICES OF
CLIFFORD A. CANTOR, P.C.
627 208th Ave. SE
Sammamish, WA 98074-7033
Tel. (425) 868-7813 • Fax: (425) 868-7870

11.    In furtherance of the deception, Defendant's landing pages may be reached from embedded links in fake blog testimonials ("flogs") and fake news articles with, again, stock photos and testimonials purportedly representing actual consumers from one's own city or state. These consumers relate stories of terrific success using the Pacific WebWorks product. Examples of these flogs and fake news articles deceptively used to sell Pacific WebWorks's products are:

    a.    "USA Online Journal-Finance News" in which "Mary Steadman" tells how she "quit her boring job as a manufacturer's representative" and "now makes $6,500+ a month" using Pacific WebWorks products.

    b.    "Consumer Weekly," in which the same "Mary Steadman" photo is used, but this time portrayed as "Elaine Love," tells the story of a woman who also lost her "boring" manufacturing job and now makes thousands using Pacific WebWorks products.

    c.    "Chicago Job News" at which "Jerry Reynolds" describes how he "lost his boring job as an account representative for a manufacturing company" and "now makes $5,500+ a month just by submitting small text ads online on Google."

    d.    "Scott Hunter" on "wthguide.info," a blog that states how Mr. Hunter also "lost his job as a boring account representative for a manufacturing company." "Scott" makes "$9,000+ a month just by submitting small text ads on Google." Upon information and belief, "Scott Hunter" is the pseudonym of an affiliate marketer driving traffic to a Pacific WebWorks site.

12.    "Mary Steadman," the most widely used fake person in fake news articles selling work-at-home products, is also featured or has been featured on the following fake news sites and at least 90 more websites all across the internet:  www.Seattle-Tribune.com, www.SeattleChronicleNews.com, www.Seattle Gazette News.com, www.Seattle Post Daily.com, www.The-Seattle-Tribune.com, www.The Seattle Journal News.com, www.The Washington Gazette News.com, www.Washington-Reporter.com, www.Washington-Tribune.com, www.SanFrancisco-Tribune.com, www.SanFranCiscoCityHearld.com, www.Sandiego-Tribune-

COMPLAINT                   - 4 -

LAW OFFICES OF
CLIFFORD A. CANTOR, P.C.
627 208th Ave. SE
Sammamish, WA 98074-7033
Tel: (425) 868-7813 • Fax. (425) 868-7870

1   News.com, www.SanDiego-Tribune.com, www.SanJose-Herald.com, www.SanJose-Times.com,

2   www.TheLosAngelesJournal.com, www.LosAngelesTribuneNews,

3   www.LosAngelesNews7.com, www.LosAngelesFinanceNews.com, www.Los-Angeles-

4   Weekly.com, www.LosAngelesDispatch.com, www.4KAWeekIn3Steps.com,

5   www.Action7Journal.com, www.AmericaFinanceNews.com, www.AmericaJobJournal.com,

6   www.AmericaNewsDaily.com, www.B12-Media.com, www.BargainBoomer.com, www.Best-

7   Job-In.com, www.BirmingHamTribune.co.uk, www.Boston-BusinessNews.com, www.Boston-

8   Tribune.com, www.BostonFinanceNews.com, www.BostonGazetteNews.com,

9   www.OrlandoWebTimes, www.ReadSomeNews.com, www.Online-Job-News.com,

10  www.NYGazetteNews.com, www.NewYorkPostHeaJld.com,www.NewYorkPostHeaJld.com.

11       13.    Defendant Pacific WebWorks also derives sales from online traffic routed through

12  fake consumer review sites. At these sites, alleged "advocates" for consumers endorse Pacific

13  WebWorks's products with laudatory language and within the body of the fake reviews link to

14  deceptive transaction pages for those products.

15       14.    The online order path leading to Defendant's transaction pages are littered with

16  pictures of individuals that testify to the success they have enjoyed using Pacific WebWorks's

17  product. The individuals in Defendant's fake photos are not from the consumer's city or state; in

18  fact, the specific locale represented is dynamically generated by instructions contained in the

19  underlying source code for the screen page presented. That is, "Sara Stanley" from

20  "Sacramento" is in fact simply a fictitious person whose city name is generated by source code

21  that recognizes and responds to the (Sacramento) IP address of the consumer's computer.

22       15.    Once at the landing page, a consumer is required to give Pacific WebWorks

23  certain "personally identifying information" (PII) to "CHECK AVAILABILITY" of this

24  "LIMITED TIME OFFER!" A consumer's submission of her PII enables Pacific WebWorks to

25  sell this information to other marketers of goods and products. Thus, a consumer actually does

26  not have to "qualify" for anything, but is instead submitting to a lead generation process by

27  which their PII (a "lead") is monetized by Pacific WebWorks and the consumer unknowingly

LAW OFFICES OF
CLIFFORD A. CANTOR, P.C.
627 208th Ave. SE
Sammamish, WA 98074-7033
Tel: (425) 868-7813 • Fax: (425) 868-7870

1  "consents" to the receipt of additional email offers from an untold number of merchants (*i.e.*,

2  anyone to whom Pacific WebWorks can sell this information).

3       16.    The product offered by Pacific WebWorks is promised at a minimal price, usually

4  less than $2.00, which is represented as covering all costs of the product.  Importantly, in order to

5  cover this small charge, Pacific WebWorks requires that consumers give it a credit card number.

6       17.    A consumer's credit card number is entered into a credit card submit field on an

7  online transaction page (the transaction page most often directly follows the landing page – the

8  order path may be understood as starting with the initial representation that drives traffic to the

9  landing path where a consumer's PII is taken.  A billing or transaction page completes the online

10  order path).

11       18.    Materially, the only price representation clearly and conspicuously displayed on

12  the credit card submit page or in proximity to the credit card submit box is a line that states

13  "**Total: $1.97.**"  Defendant intentionally made all representations of the actual price difficult to

14  locate and/or read, by hiding these representations on a separate page, or displaying these

15  representations far from the payment fields in a miniscule font and diminished color contrast

16  ratio.

17       19.    Calls to action like "<u>LIMITED TIME OFFER</u>!" and "WORK FROM HOME,

18  SET YOUR OWN HOURS, THEN LIVE YOUR LIFE!" are found on these pages.  These

19  phrases are part of a static background image that are saved and displayed every time the page

20  loads on a consumer's browser.

21       20.    Compelling phrases including "Satisfaction Guaranteed," and "100% Trusted!"

22  appear in large print scattered about the page.

23       21.    Ultimately, a consumer reasonably understands that ordering the Pacific

24  WebWorks product will cause them to incur a small charge on their credit card.  In fact, this

25  small price is simply bait for a credit card number that can then be used to impose additional

26  charges on the consumer.

27       22.    While the actual price of a product is always material, Defendant hides the real

COMPLAINT                - 6 -

1  price of its product in small print at the bottom of the transaction page or simply does not

2  disclose it at all on this checkout page.

3  　　　　23.　　By simply submitting credit card information to Pacific WebWorks in payment of

4  the "discounted fee" of $1.97 (Defendant also offers its product at $.97, $1.95, and $2.95), a

5  consumer purportedly and unwittingly agrees to a monthly recurring charge of $79.90 (also, in

6  some instances, $69.90) for access to a program supposedly containing information that enables a

7  consumer to "Start Making Money Today!"

8  　　　　24.　　Materially and wholly without any clear and conspicuous price disclosure,

9  consumers may also find that they have been billed $24.90 by Defendant for another unknown

10  product.  This charge is recurring in that it appears every month on a consumer's bill.  This

11  undisclosed negative option is deceptively tied to a consumer's agreement to pay a small amount

12  for a Pacific WebWorks product and is charged to consumers wholly without their authorization.

13  　　　　25.　　Thus, a consumer reasonably expecting to pay $1.97 for a Pacific WebWorks

14  product will be charged that sum plus:  1) $79.90, and 2) $24.90 a month for as long as the

15  consumer fails to notice this charge and object to it.

16  　　　　26.　　Only the charge of $1.97 is clearly and conspicuously disclosed to a consumer

17  responding to an offer from Defendant.

18  　　　　27.　　Pacific WebWorks acts with the John Doe Defendant to drive traffic to, promote,

19  and sell its work-at-home product.  Correspondingly, John Doe Defendant optimizes and

20  continually oversees the creation of the deceptive advertisements concealing material terms and

21  conditions, described herein, and receives significant revenue from the sale of each poorly-

22  disclosed Pacific WebWorks product.  John Doe Defendant pays affiliate marketers and

23  publishers a price far exceeding the de minimis price advertised to consumers (e.g., an ad

24  network will offer an affiliate payout of "$32.00 / Sale," while on the same page stating "Cost to

25  Consumer: $1.97").

26  　　　　28.　　Although Defendant uses a number of specific paths and representations for their

27  deception, each order path has a core, common underpinning, namely that a consumer will only

COMPLAINT　　　　　　　　　　　　　- 7 -　　　　　LAW OFFICES OF
　　　　　　　　　　　　　　　　　　　　　　　　　CLIFFORD A. CANTOR, P.C.
　　　　　　　　　　　　　　　　　　　　　　　　　627 208th Ave. SE
　　　　　　　　　　　　　　　　　　　　　　　　Sammamish, WA 98074-7033
　　　　　　　　　　　　　　　Tel: (425) 868-7813 • Fax: (425) 868-7870

1   be charged $1.97 for a work at home product sold by or directly associated with Google.

2   Defendant knows or should know that these ads and offers violate clearly established laws

3   requiring, among other seminal concerns, that all material purchase terms be clearly and

4   conspicuously disclosed to consumers.

5                              **PARTIES**

6        29.    Plaintiff Lisa Rasmussen is a resident of Washington. She lives in Marysville,

7   Washington.

8        30.    Defendant Pacific WebWorks is an online provider of work-at-home products

9   marketed to consumers nationwide. Pacific WebWorks is a Nevada corporation headquartered in

10   and having its principal place of business at 230 West 400 South, 1st Floor, Salt Lake City, Utah

11   84101.

12        31.    John Doe Defendant is an online advertising network that participates in the acts

13   and practices that have victimized Plaintiff and are the subject of Plaintiff's Complaint. On

14   information and belief, John Doe Defendant is one of the following corporations or corporate

15   d/b/a's: (1) Tracking202, Inc.; (2) Media Trust, LLC (Advaliant); (3) CyberPlex, Inc. (CX Digital

16   Media); (4) Coleadium, Inc. (Ads4Dough); (5) JAR, Media LLC; (6) Sybtrack.com; (7) eSynergy

17   Media, LLC; (8) W4 Media, LLC; (9) Bskytracking.com; (10) GMB Direct, Inc.; (11) Elite

18   Clicks Media, LLC; (12) Tracklead.net; (13) Track606.com; (14) Intermark Communications,

19   Inc. (Copeac); (15) Zoomleads.net; (16) Venture Incorporated (Neverblue); (17) Lidango; and

20   (18) Convert2Media, LLC.

21                  **JURISDICTION AND VENUE**

22        32.    This Court has personal jurisdiction over the Defendant under RCW 4.28.185(a)

23   and (b) because a significant portion of the acts and/or injuries giving rise to this Complaint

24   occurred in Washington.

25        33.    Jurisdiction is additionally proper in this Court because Pacific WebWorks

26   operates, conducts, engages in, or carries on business within this State.

27        34.    Venue is proper in this Court because a significant portion of the acts and/or

Law Offices of
CLIFFORD A. CANTOR, P.C.
627 208th Ave. SE
Sammamish, WA 98074-7035
Tel (425) 868-7813 ● Fax: (425) 868-7870

1 │ injuries giving rise to this Complaint occurred in Snohomish County.

2 │ **FACTS RELATING TO PLAINTIFF LISA RASMUSSEN**

3 │     35.    Plaintiff is currently a full-time nursing student, a parent, and also works part-

4 │ time. During the relevant time period, Plaintiff hoped to supplement her income in a manner that

5 │ allowed her the opportunity to work from home. To that end, Plaintiff clicked on a link on her

6 │ Yahoo home page that took her to what appeared to be a news article consisting of the

7 │ testimonial experience of a woman that utilized a Pacific WebWorks product to make thousands

8 │ of dollars a month. This site contained a link to the PII landing page described above and from

9 │ which Plaintiff reasonably understood that she could receive the Pacific WebWorks product

10 │ (pitched as "Google Business Kit") for $1.97. Plaintiff reasonably believed that this was a

11 │ Google offer.

12 │     36.    Plaintiff did not know that Google itself had nothing to do with this product nor

13 │ did Plaintiff reasonably understand that, by agreeing to pay Defendant $1.97, she also consented

14 │ to be billed for unrevealed products or services at an undisclosed price for an ongoing period.

15 │     37.    Plaintiff only authorized Defendant to bill her credit card for $1.97.

16 │ Nevertheless, and wholly without authorization from Plaintiff, on October 26, 2009, Pacific

17 │ WebWorks took from Plaintiff an additional $79.90.

18 │     38.    Plaintiff told the Pacific WebWorks representative that she would not have agreed

19 │ to pay $79.90 for this product if she would have clearly understood that this was the actual price

20 │ for the product offered. Nevertheless, despite her vehement assertions that she should not be

21 │ charged this price, Defendant refused to give Plaintiff a refund of this money.

22 │     39.    Incredibly, *after* this conversation with Defendant's representative, Pacific

23 │ WebWorks charged Plaintiff the additional sum of $24.95. Plaintiff does not know what this

24 │ charge is for and has called Pacific WebWorks repeatedly in an effort to have this additional

25 │ charge removed from her credit card bill. Various Pacific WebWorks's representatives have

26 │ assured Plaintiff that this charge will be removed. Despite these assurances, Plaintiff continues

27 │ to be charged $24.95 each month by Pacific WebWorks.

COMPLAINT           - 9 -

LAW OFFICES OF
CLIFFORD A. CANTOR, P.C.
627 208th Ave SE
Sammamish, WA 98074-7033
Tel: (425) 868-7813 • Fax: (425) 868-7870

40. Plaintiff has *not* been given a refund from Pacific WebWorks.

**CLASS ACTION ALLEGATIONS**

41. Plaintiff brings this action pursuant to CR 23 on behalf of herself and a class and one subclass, initially defined as follows.

Pacific WebWorks Class:

> All Washington residents who submitted payment information to Pacific WebWorks for the purpose of obtaining Pacific WebWorks's products or services, and who were charged any amount other than a stated shipping and handling or discounted fee (the "Class").

John Doe Defendant Subclass:

> All Washington residents who submitted credit card information to a Pacific WebWorks website for the purpose of obtaining Pacific WebWorks's products or services, and who were charged any amount other than a stated shipping and handling or discounted fee, that were traceably driven to Pacific WebWorks website(s) by John Doe Defendant, or affiliate marketers acting through or in conjunction with John Doe Defendant (the "Subclass").

The following people are excluded from the Class and Subclass: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendant, Defendant's subsidiaries, parents, successors, predecessors, and any entity in which the Defendant or its parents have a controlling interest and its current or former employees, officers, and directors; (3) persons who properly execute and file a timely request for exclusion from the Class or Subclass; and (4) the legal representatives, successors, or assigns of any such excluded persons.

42. Hereinafter, the above-described Class and Subclass, with their exclusions, shall be termed the "Classes" for purposes of this complaint.

43. Numerosity: The exact number of the members of the Classes is unknown and not available to Plaintiff. On information and belief, Defendant has deceived thousands of consumers who are members of the Class and/or Subclass. Individual joinder is impracticable in

COMPLAINT                                    - 10 -

LAW OFFICES OF
CLIFFORD A. CANTOR, P.C.
627 208th Ave. SE
Sammamish, WA 98074-7033
Tel: (425) 868-7813  •  Fax: (425) 868-7870

1   part due to numbers and in part due to geographic dispersion throughout Washington.  All

2   members of the Classes can be identified through Defendant's records.

3       44.   Commonality:  There are many questions of law and fact common to the claims of

4   Plaintiff and the other members of the Classes, and those questions predominate over any

5   questions that may affect individual members of the Classes.  Common questions for the Classes

6   include, but are not limited to the following:

7           (a)     Whether Defendant's conduct described herein violates the Washington

8       Consumer Protection Act (RCW 19.86, *et seq.*), which protects both consumers and

9       competitors by promoting fair competition in commercial markets for goods and services

10      and prohibits any unlawful, unfair or fraudulent business act or practice;

11          (b)     Whether Defendant's conduct described herein constitutes fraud in the

12      inducement;

13          (c)     Whether Defendant's conduct described herein constitutes conspiracy to

14      commit fraud in the inducement;

15          (d)     Whether Defendant's conduct described herein results in unjust

16      enrichment to Defendant;

17          (e)     Whether Defendant's conduct described herein results in a breach of

18      contract.

19      45.   Typicality:  Plaintiff's claims are typical of the claims of other members of the

20   Classes, as Plaintiff and other members sustained damages arising out of wrongful conduct of

21   Defendant based upon similar transactions that were uniformly made to Plaintiff and the public.

22      46.   Adequacy of Representation:  Plaintiff Rasmussen is committed to vigorously

23   prosecuting this action; has no disabling conflicts with the other members of the Class or

24   Subclass; and has retained competent counsel experienced in this type of litigation.

25      47.   Predominance and Superiority:  The damages suffered by the individual members

26   of the Classes will likely be relatively small, especially given the burden and expense of

27   individual prosecution of the complex litigation necessitated by the actions of Defendant.  It

COMPLAINT                          - 11 -

1   would be virtually impossible for the individual members of the Classes to obtain effective relief

2   from the misconduct of Defendant. Even if members of the Classes themselves could sustain

3   such individual litigation, it would still not be preferable to a class action, because individual

4   litigation would increase the delay and expense to all parties due to the complex legal and factual

5   controversies presented in this Complaint. By contrast, a class action presents far fewer

6   management difficulties and provides the benefits of single adjudication, economy of scale, and

7   comprehensive supervision by a single Court. Economies of time, effort, and expense will be

8   fostered and uniformity of decisions will be ensured.

9   <center>**THEORIES OF RELIEF**</center>

10   48.    Plaintiff asserts all theories of relief individually and on behalf of the Class and

11   Subclass. The legal theories under which she is entitled to relief include but are not necessarily

12   limited to the following.

13   <center>**Count I**</center>

14   <center>**Violation of the Washington Consumer Protection Act, RCW ch. 19.86**</center>

15   49.    Plaintiff incorporates by reference the foregoing allegations as if fully set forth

16   herein.

17   50.    Washington's Consumer Protection Act, RCW § 19.86.010, *et seq.* ("CPA")

18   declares that any unfair or deceptive acts or practices in the conduct of any trade or commerce are

19   unlawful.

20   51.    Defendant, by its acts or practices of (i) creating and supporting advertising that

21   fails to clearly and conspicuously disclose the actual price of its products, (ii) deceptively

22   inducing Plaintiff and the Classes to proffer payment information based on misrepresentations;

23   and/or (iii) charging credit cards without authorization, has created and is continuing to create not

24   only a capacity to deceive but also a likelihood of deception of reasonable consumers acting

25   reasonably under the circumstances.

26   52.    The harm caused by Defendant's conduct is not outweighed by any countervailing

27   benefits to consumers or competition, and the harm is one that consumers themselves could not

COMPLAINT                                                           - 12 -
LAW OFFICES OF
CLIFFORD A. CANTOR, P.C.
627 208th Ave. SE
Sammamish, WA 98074-7033
Tel: (425) 868-7813 • Fax: (425) 868-7870

1   reasonably have avoided.

2       53.     Defendant conducts these acts or practices in the course of its trade or commerce.

3       54.     Defendant's acts or practices are injurious to the public interest because they have

4   and had the capacity to injure numerous other people — and do in fact injure numerous other

5   people — throughout the state.  Defendant's acts and practices are ongoing and widespread.

6       55.     Defendant's acts or practices proximately caused Plaintiff and the Classes to lose

7   money.

8       56.     Defendant has thereby violated the CPA with respect to Plaintiff and the Classes.

9       57.     Plaintiff seeks an order requiring Defendant to, inter alia, (i) immediately stop its

10  violations of the CPA; (ii) pay all actual damages in an amount to be determined at trial; (iii) pay

11  increased or treble damages as the Court deems appropriate; and (iv) pay costs of suit, including

12  reasonable attorney's fees.

<div align="center">

**Count II**

**Fraud and/or Fraud in the Inducement**

</div>

15      58.     Plaintiff incorporates by reference the foregoing allegations as if fully set forth

16  herein.

17      59.     As described with particularity within, Defendant has disseminated, and continues

18  to disseminate advertising that it knows or should reasonably know is false and misleading.  This

19  conduct includes, but it is not limited to, promoting and advertising "work-at-home" products

20  without disclosing the actual price, a material term of any transaction.  Defendant actively

21  misstates, misrepresents and conceals the actual price(s) consumers are charged when they

22  submit their credit card information.

23      60.     Through a series of advertisements, representations and false statements regarding

24  the efficacy, association, and price of work-at-home products, Pacific Web Works and the John

25  Doe Defendant acted in concert to misrepresent the actual price a consumer would be charged.

26  These Defendants took concrete and intentional steps to conceal the Terms of Service and/or all

27  other representations of the actual price placed on consumers' credit cards.  Defendant

COMPLAINT                              - 13 -

1  intentionally made all representations of the actual price difficult to locate and/or read, by hiding

2  these representations on a separate page, or displaying these representations far from the payment

3  fields in a miniscule font and diminished color contrast ratio.

4      61.    John Doe Defendant, an ad network, actively took part in optimizing the work-at-

5  home transaction pages to increase the rate of conversions (sales) and has full knowledge and

6  visibility of the website content and each transaction, including knowledge of the concealed

7  prices.  Specifically, Defendant ad network pays affiliate marketers and publishers a price far

8  exceeding the de minimis price advertised to consumers (e.g., an ad network will offer an

9  affiliate who drives traffic to its transaction page a payout of "$32.00 / Sale," while on the same

10  page stating, "**Cost to Consumer: $1.97**").

11      62.    Defendant intentionally misrepresented the association its work-at-home products

12  have with Google and media outlets by making representations that the products stem from

13  Google and have been endorsed by television networks.

14      63.    By committing the acts alleged in this complaint, Defendant has knowingly

15  disseminated untrue and/or misleading statements through false advertising in order to sell or

16  induce members of the public to purchase work-at-home products.

17      64.    The price of a consumer product is a material term of any transaction because it

18  directly affects a consumer's choice of, or conduct regarding, whether to purchase a product.

19  Defendant's deception or fraud related to the price of consumer products is materially

20  misleading.

21      65.    The misrepresentation of the price of a product is likely to mislead a reasonable

22  consumer who is acting reasonably under the circumstances.

23      66.    Defendant knew or should have known of the falsity of the representations made

24  regarding the work-at-home products they marketed.

25      67.    Defendant intended that the deceptive and fraudulent representations would

26  induce a consumer to rely and act based on those false representations.

27      68.    Plaintiff and members of the Classes were all charged monies far in excess of

COMPLAINT                  - 14 -

LAW OFFICES OF
CLIFFORD A. CANTOR, P.C.
627 208th Ave. SE
Sammamish, WA 98074-7033
Tel: (425) 868-7813 • Fax: (425) 868-7870

1  what they authorized.  Accordingly, Plaintiff and members of the Classes have suffered injury in

2  fact and lost money in justifiable reliance on Defendant's misrepresentations of material fact.

3      69.    In deceiving Plaintiff and the Classes by creating and supporting advertising that

4  fails to clearly and conspicuously disclose the actual price of its products, and inducing Plaintiff

5  and the Classes to proffer payment information based on that misrepresentation, Defendant has

6  engaged in fraudulent practices designed to mislead and deceive consumers.

7      70.    Plaintiff and the Classes have suffered harm as a proximate result of the wrongful

8  conduct of Defendant.

9      71.    Plaintiff seeks, inter alia, damages caused by Defendant's fraud and/or fraud in the

10 inducement.

11 **Count III**

12 **Conspiracy to Commit Fraud and/or Conspiracy to Commit Fraud in the Inducement**

13     72.    Plaintiff incorporates by reference the foregoing allegations as if fully set forth

14 herein.

15     73.    Pacific WebWorks and John Doe Defendant acted in concert as business partners

16 to drive sales of work-at-home products and cram consumers with unauthorized charges through

17 false and deceptive marketing, actions constituting fraud in the inducement, as stated in Count II

18 of this Complaint.

19     74.    As a fundamental part their business relationship, Pacific WebWorks and John

20 Doe Defendant acted to deceive consumers regarding the actual price of the work-at-home

21 products, thereby inducing consumers to submit their credit card information, so that Defendant

22 Pacific WebWorks could cram consumers with unauthorized charges.

23     75.    Pacific WebWorks and John Doe Defendant took overt acts in furtherance of their

24 conspiracy.  As described with particularity above, Pacific WebWorks and John Doe Defendant

25 formed contracts with each other, created deceptive marketing, advertisements, websites, and

26 other solicitation materials to drive consumers to the work-at-home transaction page with

27 knowledge that the marketing contained therein was false and misleading, and with the intent that

COMPLAINT                  - 15 -            

LAW OFFICES OF
CLIFFORD A. CANTOR, P.C.
627 208th Ave. SE
Sammamish, WA 98074-7033
Tel: (425) 868-7813 • Fax: (425) 868 7870

1   the marketing taken as a whole would be relied on by consumers. Pacific WebWorks and John

2   Doe Defendant further partnered with affiliate markers and publishers to increase the

3   effectiveness of its fraudulent and deceptive marketing. Pacific WebWorks and John Doe

4   Defendant, working together, and working with non-defendant affiliate marketers and publishers,

5   formed a mutually beneficial network for the purpose of fraudulently and deceptively inducing

6   consumers to submit a credit card number.

7       76.   Any single Defendant, acting alone, would be unable to accomplish the level of

8   deception and fraud accomplished by Pacific WebWorks and John Doe Defendant acting

9   together.  The combination of their joint fraud results in a highly fabricated offer that reinforces

10  the appearance of legitimacy presented to consumers, thereby increasing the likelihood that a

11  consumer will submit their credit card number.

12      77.   Plaintiff and the Classes have suffered harm in the form of monetary damages as a

13  proximate result of the conspiracy carried out by Pacific WebWorks and John Doe Defendant.

14      78.   Plaintiff seeks, inter alia, damages caused by Defendant's conspiracy to commit

15  fraud and/or conspiracy to commit fraud in the inducement.

16                              **Count IV**

17                      **Restitution / Unjust Enrichment**

18      79.   Plaintiff incorporates by reference the foregoing allegations as if fully set forth

19  herein.

20      80.   Plaintiff and the Classes conferred a monetary benefit on Defendant.  Defendant

21  has received and retained money belonging to Plaintiff and the Classes resulting from substantial

22  unauthorized charges placed on their credit card bills by Pacific WebWorks.  Defendant profits

23  from each individual purchase made by a consumer after being directed to Pacific WebWorks's

24  transaction pages.

25      81.   Defendant appreciates or has knowledge of such benefit.

26      82.   Under principles of equity and good conscience, Defendant should not be

27  permitted to retain the money belonging to Plaintiff and the Classes, which Defendant has

COMPLAINT                          - 16 -        LAW OFFICES OF
CLIFFORD A. CANTOR, P.C.
627 208th Ave. SE
Sammamish, WA 98074-7033
Tel: (425) 868-7813 • Fax. (425) 868-7870

1  unjustly received as a result of its unlawful actions.

2       83.    Plaintiff and other members of the Class suffered damages as a direct result of

3  Defendant's conduct.

4       84.    Plaintiff seeks, inter alia, restitution resulting from Defendant's unjust

5  enrichment.

6  <div align="center">**Count V**</div>

7  <div align="center">**Breach of Contract**</div>

8       85.    Plaintiff incorporates by reference the foregoing allegations as if fully set forth

9  herein.

10       86.    In reliance upon Defendant's misrepresentations and deceptive advertising,

11  Plaintiff entered into a contract to receive a product from Pacific WebWorks at a genuinely

12  discounted price, or for the cost of shipping and handling only.  Because of these deceptive

13  misrepresentations, Plaintiff and the Pacific WebWorks Class entered their credit card

14  information with the understanding that they would only be charged a genuinely discounted price

15  or the cost of shipping and handling in exchange for a product from Pacific WebWorks.

16       87.    By cramming additional undisclosed charges on the credit/debit cards of Plaintiff

17  and the members of the Pacific WebWorks Class, Pacific WebWorks breached the contract for

18  the purchase of a product at the clearly disclosed price described above.  Plaintiff and the

19  members of the Pacific WebWorks Class did not assent to any additional charges and did not

20  reasonably expect that the contract for purchase and sale would include such additional charges.

21       88.    At all times relevant to this action, Pacific WebWorks acted willfully and with the

22  intent to breach the contracts they entered into with Plaintiff and the Pacific WebWorks Class.

23       89.    Plaintiff and the Pacific WebWorks Class have suffered damages as a direct result

24  of Pacific WebWorks's acts and practices in the form of monies paid and lost.

25       90.    Plaintiff seeks, inter alia, damages caused by Defendant's breach of contract.

26  <div align="center">**PRAYER**</div>

27       WHEREFORE Plaintiff Lisa Rasmussen, on behalf of herself and the Class and Subclass,

COMPLAINT           - 17 -

LAW OFFICES OF
CLIFFORD A. CANTOR, P.C.
627 208th Ave. SE
Sammamish, WA 98074-7033
Tel: (425) 865-7813 • Fax: (425) 868-7870

prays for the following relief:

(a)   An order certifying the Class and Subclass as defined above;

(b)   Appoint Lisa Rasmussen as Class and Subclass representative and the undersigned counsel as lead counsel of this class action;

(c)   Declare that Defendant's actions described herein violate the CPA and common law, as alleged herein; and enjoin those actions to the extent necessary to protect Plaintiff, the Class and Subclass, and the public;

(d)   Enter judgment against Defendant Pacific WebWorks, Inc. for actual damages caused by its conduct, increased and/or trebled to the extent appropriate under RCW § 19.86.090;

(e)   Award Plaintiff and the Classes reasonable costs, expenses, and attorneys' fees, to the extent permissible;

(f)   Award Plaintiff and the Classes pre- and post-judgment interest, to the extent permissible;

(g)   Such further and other relief the Court deems reasonable and just.

## JURY DEMAND

Plaintiff requests a trial by jury of all issues so triable.


Dated:  November 19, 2009

                              Respectfully submitted,

                              LAW OFFICES OF CLIFFORD A. CANTOR, P.C.

                              By:   _Cliff Cantor_____
                                    Clifford A. Cantor, WSBA # 17893
                                    627 208th Ave. SE
                                    Sammamish, WA 98074
                                    Tel: (425) 868-7813
                                    Fax: (425) 868-7870

COMPLAINT                          - 18 -

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27

Will Haselden
Christopher Dore
KAMBEREDELSON, LLC
350 North LaSalle, Suite 1300
Chicago, IL 60654
Tel: (312) 589-6370

Counsel for Plaintiff

COMPLAINT

- 19 -

Exhibit B

FILED

NOV 2 0 2009

SONYA KRASKI
SNOHOMISH COUNTY CLERK
EX-OFFICIO CLERK OF COURT

SUPERIOR COURT OF WASHINGTON
SNOHOMISH COUNTY

| | |
|---|---|
| LISA RASMUSSEN, individually and on behalf of all others similarly situated, | Case No. |
| Plaintiff. | **SUMMONS — 60 days** |
| vs. | |
| PACIFIC WEBWORKS, INC., a Nevada corporation, and JOHN DOE DEFENDANT, | |
| Defendants. | |

TO THE DEFENDANT:

A lawsuit has been started against you in the above-entitled court by Lisa Rasmussen, plaintiff. Plaintiff's claim is stated in the written complaint (the "Complaint"), a copy of which is served upon you with this Summons.

In order to defend against this lawsuit, you must respond to the Complaint by stating your defense in writing, and by serving a copy upon the person signing this summons within 60 days after the service of this summons, excluding the day of service, or a default judgment may be entered against you without notice. A default judgment is one where plaintiff is entitled to what she asks for because you have not responded. If you serve a notice of appearance on the undersigned person, you are entitled to notice before a default judgment may be entered.

LAW OFFICES OF
CLIFFORD A. CANTOR, P.C.
627 208th Ave. SE
Sammamish, WA 98074-7033
Tel: (425) 868-7813 • Fax: (425) 868-7870

1    You may demand that the plaintiff file this lawsuit with the court.  If you do so, the

2  demand must be in writing and must be served upon the person signing this summons.  Within

3  14 days after you serve the demand, the plaintiff must file this lawsuit with the court, or the

4  service on you of this summons and complaint will be void.

5    If you wish to seek the advice of an attorney in this matter, you should do so promptly so

6  that your written response, if any, may be served on time.

7    This summons is issued pursuant to Rule 4 of the Superior Court Civil Rules of the State

8  of Washington.

9    Dated: Nov. 19, 2009          Respectfully submitted,

10                                  LAW OFFICES OF CLIFFORD A. CANTOR, P.C.

11                                  By: _____

12                                      Clifford A. Cantor, WSBA # 17893
                                        627 208th Ave. SE
13                                      Sammamish, WA  98074-7033
                                        Tel:   (425) 868-7813
14                                      Fax:   (425) 868-7870

15

16                                  Will Haselden
                                    Christopher Dore
17                                  KAMBEREDELSON, LLC
                                    350 North LaSalle, Suite 1300
18                                  Chicago, IL 60654
                                    Tel:   (312) 589-6370
19

20                                  Attorneys for Plaintiff

21

22

23

24

25

26

27

SUMMONS — 60 days                    - 2 -        LAW OFFICES OF
                                                  CLIFFORD A. CANTOR, P.C.
                                                    627 208th Ave. SE
                                                  Sammamish, WA 98074-7033
                                          Tel: (425) 868-7813 ● Fax: (425) 868-7870